## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES

   v.

KINGLEY R. CHIN,
ADITYA HUMAD, and
SPINEFRONTIER, INC.,
    *Defendants*.

No. 1:21-cr-10256-IT

## DEFENDANTS KINGLEY CHIN'S AND ADITYA HUMAD'S
## MOTION TO RECONSIDER THE COURT'S JUNE 7, 2024 ORDER
## RE: ATTORNEY-CLIENT PRIVILEGE
## AND POTENTIAL TRIAL DEFENSES [D.E. 179]

Defendants Kingsley R. Chin and Aditya Humad respectfully request that this Court reconsider those portions of its June 7, 2024 Order, D.E. 179, that established certain procedures in the event that "Defendants invoke an advice/involvement-of-counsel defense" before or during trial. *Id.* at 7. For purposes of this motion for reconsideration, Dr. Chin and Mr. Humad focus their challenge on the ruling that if "Defendants point out to the jury . . . 'the presence of [the] many *lawyers* 'in the room,'" *id.* at 5-6 n.1 (quoting D.E. 155 at 15) (emphasis in original), this Court will instruct the jury that "no exculpatory reference may be drawn from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived" at trial. *Id.*

This Court has "the inherent power . . . to afford relief from interlocutory judgments . . . as justice requires." *Green v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985); *see also Douglas v. York Cnty.*, 360 F.3d 286, 290 (1st Cir. 2004) ("When faced with a motion to reconsider, the district court must apply an interest-of-justice test."). What "justice requires" in a particular case "amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C.

1

2005). Here, given the significant interests at stake – the constitutional rights of Dr. Chin and Mr. Humad to fair trials of the criminal charges against them and the common-law right of Defendant SpineFrontier, Inc. (and Impartial Medical Experts ("IME")) to maintain its attorney-client privilege over confidential legal communications with corporate counsel – the interests of justice warrant reconsideration so that this Court can clarify how trial will proceed and avoid unnecessary delays or other problems after the jury is impaneled.

For several reasons, the June 7, 2024 Order departs from settled law and is unlikely to accomplish this Court's stated objectives. First, as a conceptual matter, "pointing" to a lawyer's presence at an alleged crime scene (in this case, the corporate offices of SpineFrontier), and suggesting an exculpatory inference, is not tantamount to "reliance" on that lawyer's advice and, thus, does not waive the attorney-client privilege over confidential legal communications. Such an argument would be comparable to a defendant pointing to the clear presence of a police officer to suggest that she would not have done something intentionally wrong with an officer watching. Second, although the Defendants are aligned in certain respects regarding their defense strategies, they are individual parties; Dr. Chin and Mr. Humad have constitutional rights to present their own defenses, including through evidence and argument about corporate counsel, but they cannot waive any privilege that SpineFrontier itself controls, nor can they compel SpineFrontier to forfeit that protection. Finally, and no less importantly, the current procedure cannot be implemented as planned. The June 7, 2024 Order anticipated that before trial, this Court would hold under seal documents that outside counsel would produce in response to a trial subpoena from the prosecution and that during trial, this Court would order the disclosure of those documents in the event that it finds a privilege waiver. But the prosecution has not yet subpoenaed the communications that it seeks, outside counsel has not produced them to this Court, and SpineFrontier has not had an

opportunity to assert privilege. Accordingly, at this point, there is nothing for this Court to disclose in the event of a waiver.

**I.      If Dr. Chin or Mr. Humad elicits evidence or presents argument about the mere presence or involvement of counsel for SpineFrontier (or the consulting surgeons), as opposed to their actual reliance on any confidential legal advice from counsel, this Court should not find any waiver of the attorney-client privilege.**

In ruling that the Defendants will waive the attorney-client privilege if they "seek to draw an exculpatory inference" from the non-privileged "presence or involvement" of any attorney, this Court relied on *United States v. Gorski*, 36 F. Supp. 3d 256, 267 (D. Mass. 2014), which was primarily concerned with the crime-fraud exception and disqualification of counsel, not the advice-of-counsel defense and waiver of privilege. *Gorski* ruled only that "a defendant's decision to raise the advice or involvement of counsel *may* serve as a waiver of the attorney-client privilege." *Id.* at 268 (emphasis added). While that is true, the statement only begs the question whether raising an issue about the presence or involvement of counsel *in this case* would trigger any waiver. *See id.* ("Whether such a waiver is triggered necessarily depends on the facts and circumstances of the case.") (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 187-90 (2d Cir. 2000)); *see also XYZ Corp. v. United States*, 348 F.3d 16, 23 (1st Cir. 2003) (holding evaluation of implied waiver of attorney-client privilege "depends on a fastidious sifting of the facts and careful weighing of the circumstances").[1]

Importantly, *Gorski* recognized that "[n]ot every passing reference to counsel will . . . trigger a waiver of the privilege," 36 F. Supp. 3d at 268, and in doing so, it relied on *United States v. White*, 887 F.2d 267 (D.C. Cir. 1989) (Ginsburg, J.) (reversing fraud convictions because trial court improperly admitted privileged communications), which held "acknowledgement that one's attorney was present during a conversation is not equivalent to affirmative reliance on his advice

---

[1] *Gorksi* did not define "involvement of counsel," and it did not even discuss "presence of counsel."

that one's action is legal." *Id.* at 270; *see id.* (explaining advice of counsel defense is "an assertion more positive and specific than a general denial of criminal intent" because it requires "evidence of communications to and from [an attorney]"). *White* cautioned that a rule requiring waiver of the attorney-client privilege based only on evidence or argument about the presence or involvement of counsel would improperly "cut short both" the privilege and due process. *Id.* As to the former, "[a] rule . . . forfeiting the privilege upon denial of *mens rea* would deter individuals from consulting with their lawyers to ascertain the legality of contemplated actions," which is "the animating purpose of the privilege." *Id.* Regarding the latter, "to be acquitted for lack of criminal intent," a defendant "need not . . . present[] any evidence," but may exercise "the constitutional right to put the government to its proof on all the elements of the offense." *Id.* (citing *In re Winship*, 397 U.S. 358, 364 (1970)).

Here, Dr. Chin and Mr. Humad can present defenses that the presence of counsel bears on the alleged willfulness of any illegal activity without disclosure what they may have said to any attorney or what any attorney may have told them. Barring Dr. Chin and Mr. Humad from making that case, unless they waive privilege, would force them to make an unfair choice, undermining the privilege and infringing on their rights. *See id.* at 270 (holding that waiver in similar circumstances would unfairly "penalize" defendant).

*United States v. Gasparik*, 141 F. Supp. 2d 361 (S.D.N.Y. 2001), illustrates how *White* – and its critical distinction between the specific advice of counsel defense and the general denial of criminal intent – applies in a case like this one. The trial court rejected the prosecution's argument that, in his opening statement, Gasparik's counsel had impliedly waived the attorney-client privilege by raising a "good faith defense," which expressly referenced another attorney, Fidler, whom Gasparik had previously consulted. *Id.* at 371. The court ruled that defense counsel did not

trigger a privilege waiver, because he previewed the defense "only in a very limited fashion," by arguing that "Gasparik did not want to do anything illegal and preferred to be guided by his attorney, Fidler," and without disclosing any "particular conversation between Gasparik and Fidler." *Id.* Although Gasparik "averred generally that he would not act without his attorney's authorization," his defense did not result in "a broad subject-matter waiver of the attorney-client privilege." *Id.* at 372.

In this case, Dr. Chin and Mr. Humad are entitled to present a similar defense, holding the prosecution to its burden to prove beyond a reasonable doubt that they "willfully" violated the AKS, without any risk that such evidence or argument would be deemed to waive the attorney-client privilege. So long as Dr. Chin and Mr. Humad do not rely on (or otherwise disclose) specific privileged advice from their counsel, no waiver would occur. This issue becomes even more clear in light of the presence of lawyers for the surgeon-consultants at issue, who helped negotiate the consulting agreements and reviewed the structure of those relationships. Their additional participation would naturally tend to make all those involved, including Dr. Chin and Mr. Humad, more comfortable with the legal validity of the consulting program.

On the issue of waiver, other than *Gorski*, this Court cited only *United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 202243 (D. Me. Oct. 30, 2020). But legally, that decision was an outlier, *see, e.g.*, D.E. 155 at 12-13 (citing cases taking narrower view of disclosure requirements and possible waiver), and factually, the case contrasts sharply with this one.[2] The

---

[2] The October 2020 decision in *Liberty* was actually the third pre-trial decision about the waiver of attorney-client privilege in the prosecution of Michael Liberty for wire fraud, securities fraud, and money laundering. *See United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 170941 (D. Me. Feb. 12, 2020) (granting prosecution's motion for "abrogation" of privilege); *United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 170449 (D. Me. July 29, 2020) (overruling objections to disclosure of specific communications with counsel).

Indictment against Michael Liberty charged a co-defendant, Paul Hess, and it also implicated "Individual 1," George Marcus, an attorney and unindicated co-conspirator. *United States v. Liberty*, No. 2:19-cr-00030-GZS, 2020 U.S. Dist. LEXIS 170941, at *1 (D. Me. Feb. 12, 2020). While Attorney Marcus did not face any charges, he played a central role in the alleged offenses that his client, Liberty, committed.

> In the pending Indictment, Attorney Marcus figures prominently as an unindicted co-conspirator in Counts One and Seven. Additionally, the IOLTA account controlled by Attorney Marcus and his firm play a prominent role in Counts Eight, Nine, and Ten. Given the unique factual allegations of this Indictment, the Court initially concludes that the Indictment itself provides a sufficient basis for concluding that Liberty intended to facilitate his alleged criminal activity via his communications with Marcus and his use of the Marcus Clegg IOLTA account during the time period covered by the Indictment.

*Id.* at *9-10; *see id.* at *10 ("Looking beyond the Indictment to the full record provided to the Court in connection with th[e] Motion [to waive the attorney-client privilege], the Court is likewise satisfied that Liberty intended to facilitate and conceal the activity charged in the Indictment via communications with Marcus."). That background is critical to understanding the later reference in the October 2020 decision to "the previously court-ordered production" and "the prominent role that Attorney Marcus plays in the Indictment." 2020 U.S. Dist. LEXIS 202243, at *6. It made complete sense for the trial court to rule that Liberty could not try to hide behind the "involvement of counsel," when he had conspired with Attorney Marcus to defraud the victims and used Attorney Marcus, and his law firm, to accomplish the unlawful transactions.

In contrast, here, the Indictment does not even mention Strong & Hanni LLP, outside counsel whom SpineFrontier (and IME) engaged to provide a legal opinion for surgeons (and their own counsel) regarding the consulting program, or any in-house legal and compliance personnel, who assisted SpineFrontier (and IME) with developing, implementing, and managing that

consulting program and with publicly disclosing to CMS all the consulting payments by SpineFrontier to surgeons. Unlike in *Liberty*, the prosecution has not identified any attorney as an unindicted co-conspirator, accused any attorney of any wrongdoing whatsoever, or sought to apply the crime-fraud exception to communications between SpineFrontier and any corporate counsel.

The prosecution complains about potential "unfairness" at trial, insisting that Defendants should not be permitted to use the privilege as "a shield and a sword." D.E. 153 at 2, 5-6, 11. But when only the non-privileged presence or involvement of counsel is at issue, rather than any claimed reliance on legal advice from counsel, and where there is no allegation that counsel acted improperly, it is neither unfair nor inconsistent to maintain the privilege.

> An averment that lawyers have looked into a matter does not imply an intent to reveal the substantive of the lawyers' advice. Where a defendant neither reveals substantive information, nor prejudices the government's case, nor misleads a court by relying on an incomplete disclosure, *fairness and consistency do not require the inference of waiver*.

*White*, 887 F.2d at 271 (emphasis added) (citing *In re Von Bulow*, 828 F.2d 94, 101-02 (2d Cir. 1987)); *United States v. Aronoff*, 466 F. Supp. 855, 862 (S.D.N.Y. 1979)).

Without hearing about any specific communications with counsel, the jury could reasonably conclude Dr. Chin and Mr. Humad would not have engaged in a brazen bribery scheme with lawyers watching, for the same common-sense reason that a person would be less likely to commit a serious crime in the presence of his mother, minister, or member of law enforcement, regardless of whether the person ever discussed his conduct with any bystander, much less solicited advice about it. Moreover, the jury could reasonably decide that the fact the persons "in the room" were lawyers, not laypersons, made it even less likely that Dr. Chin and Mr. Humad would willfully violate the law, because lay people would naturally expect that a lawyer would be more likely to spot potential legal misconduct and may be more inclined to stop it or report it.

II.    **Neither Dr. Chin nor Mr. Humad has the authority to waive the attorney-client privilege over communications with corporate counsel, because SpineFrontier controls that privilege.**

It is axiomatic that a non-client cannot waive a client's attorney-client privilege. Here, SpineFrontier has, as the prosecution concedes, a common-law right to maintain the confidentiality of all privileged communications that the company had with its attorneys, both outside and in-house counsel. *See Upjohn Co. v. United States*, 449 U.S. 383 (1981) (holding the attorney-client privilege, "the oldest of the privileges for confidential communications known to the common law," "applies when the client is a corporation"); *Swidler & Berlin v. United States*, 524 U.S. 399 (1998). Because the privilege belongs to SpineFrontier, as the client, only the company can waive it. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007) (en banc) ("[The attorney-client privilege] belongs to the client, who alone may waive it."); *In re Von Bulow*, 828 F.2d at 100 ("Of course, the privilege belongs solely to the client and may only be waived by him."); *Reis v. Amtrak*, No. 07-cv-236-S, 2008 U.S. Dist. LEXIS 142044, at *7 (D.N.H. May 27, 2008) ("The privilege belongs solely to the client and may only be waived by him or her [or it]."); *In re Grand Jury*, 106 F.R.D. 255, 258 (D.N.H. 1985) ("The privilege belongs to and may be waived only by the former client.").

Put another way, Dr. Chin and Mr. Humad cannot waive SpineFrontier's protection for its confidential legal communications. The language of *XYZ Corp. v. United States*, 348 F.3d 16 (1st Cir. 2003), confirms the well-established limitation on who may waive the privilege. As this Court stated: "The privilege may be expressly or implicitly waived where '*a party asserting the privilege* place[s] protected information in issue for personal benefit through some affirmative act.'" D.E. at 3 (quoting *In re XYZ Corp.*, 348 F.3d at 24) (emphasis added). Here, SpineFrontier, as the client, is "[the] party asserting the privilege" over each communication, and the company alone may choose to waive that privilege.

At the same time, Dr. Chin and Mr. Humad, who each faces serious criminal charges, have fundamental constitutional rights to a fair trial. Those rights, based largely on the Fifth and Sixth Amendments, include requiring proof beyond a reasonable doubt for any conviction, *see In re Winship*, 397 U.S. 358 (1970); confronting any witness that the prosecution calls or evidence that it presents, *see Crawford v. Washington*, 541 U.S. 36 (2004); challenging the credibility of any witness, *see Davis v. Alaska*, 415 U.S. 308 (1974); making argument that ask the jury to draw exculpatory inferences from the evidence, *see Herring v. New York*, 422 U.S. 853 (1975); presenting their own evidence, *see Washington v. Texas*, 388 U.S. 14 (1967); and even testifying in their own defense, *Rock v. Arkansas*, 483 U.S. 44 (1987).

Given this Court's Order, the prosecution's decision to charge all three Defendants creates an irreconcilable conflict between these various rights. On the one hand, Dr. Chin and Mr. Humad are entitled to present evidence and argument that many lawyers, including outside counsel for SpineFrontier and independent counsel for certain surgeons who had all been engaged to ensure the legality of the consulting program, were actively involved in non-privileged ways in the allegedly unlawful activities in this case, such as entering consulting agreements with surgeons, paying surgeons for consulting advice, and reporting those payments to the government on a public website. Dr. Chin and Mr. Humad are further entitled to ask the jury to conclude that the participation of so many lawyers – none of whom has been charged or accused of any wrongdoing whatsoever – tends to show that Dr. Chin and Mr. Humad did not "willfully" violate the Anti-Kickback Statute by violating any known legal duty. At the same time, however, neither Dr. Chin nor Mr. Humad can waive SpineFrontier's privilege (or the surgeons' privileges) over confidential legal communications with counsel or force the actual client to give up that protection. In the context of the attorney-client privilege, *White* made clear: "The prosecution may not gain, through

the device of a joint trial, admission against one defendant of otherwise inadmissible evidence on

the happenstance that the door to admitting the evidence has been opened by a co-defendant." 887

F.2d at 270 (collecting cases).

### III. The proposed procedure to deem the attorney-client privilege waived will cause, rather than avoid, confusion and delay.

At trial, the jury will inevitably hear about the extensive involvement of legal counsel and

compliance officers in the consulting program, which the prosecution contends was an unlawful

bribery scheme. Thus, as a practical matter, deeming the privilege to be waived "if Defendants

point out to the jury" that many lawyers or compliance personnel participated in the activities at

issue would be unfair and unworkable. Trying to prevent the parties from addressing such obvious

and salient facts with the jury risks complicated mid-trial fights over line-drawing and, more

importantly, significant juror confusion.

For example, consider the opinion letter from Strong & Hanni LLP, the law firm that

SpineFrontier engaged for legal advice about AKS compliance. The Indictment charges that all

three Defendants paid or directed payment of "bribes" to surgeons "pursuant to a sham consulting

program." D.E. 1 at ¶ 29. In its motion to waive the privilege, which this Court denied, the

prosecution argued that "SpineFrontier and IME" obtained opinion letters from Strong & Hanni

"regarding the legality of the consulting agreements" with surgeons and "disseminated these letters

to prospective doctor consultants as a means to provide a veneer of legitimacy to their illegal

kickback scheme." D.E. 153 at 1; *see also id.* at Ex. A (attaching copy of legal opinion letter).

Presumably, at trial, the prosecution will seek to introduce the letters – likely, several different

copies from different dates and with slightly different language.

The evidence will inevitably establish that Strong & Hanni is a law firm and that it drafted

legal opinion letters for SpineFrontier (and IME), concluding that the consulting program at issue

fully complied with the AKS. The header of the letters identifies Strong & Hanni as a "law firm" and a member of "US Law." The letters further state that Strong & Hanni "acted as counsel" for SpineFrontier (or in later versions, IME). Moreover, they offer patently "legal" conclusions: "we are of the view that the Agreement, as drafted (a) complies with 42 U.S.C. 1395nn(a)(1) (i.e., the Stark Law), 42 U.S.C. 1320a-7b (i.e., the Anti-Kickback Statute), and 42 C.F.R. Parts 402 and 403 (i.e., the Physician Payments Sunshine Act); and (b) meets the requirements set forth under 42 C.F.R. Part 1001.952(d) and 42 U.S.C. 1395nn(c)(3)." At trial, it will be impractical (if not impossible) for the parties to question or refer to outside counsel from Strong & Hanni, including Peter Baxter, who authored and signed the legal opinion letters, "without regard to their professions." D.E. 179 at 5 n.1.

    Similarly, consider the active involvement of Lesley Olson, an attorney who served as Associate General Counsel of SpineFrontier for several years (from 2014 through 2018), in a wide range of legal matters for the company, from "reviewing contracts" to "Sunshine Act reporting." When interviewed by the FBI, Olson explained that, "[u]nder the Sunshine Act, S[pine]F[rontier] was required to report payment to medical providers who bill for government programs," and she stated that, within the company, she was "responsible for compiling the information need to complete this report," including payment records from the finance department, tax records (e.g., 1099s) from the HR department, and consulting reports from the engineering department "about which SF product each doctor consulted for." As the responsible in-house attorney working in compliance, Olson engaged in exculpatory non-privileged activity, including gathering all this information, organizing it in spreadsheets by year, and adding the required data to each annual CMS report. She maintained her draft and final versions of the submissions to CMS in "the legal folder" on SpineFrontier's network. Although Humad actually submitted the final disclosure

reports to the CMS website, with access credentials in his name, Olson actively assisted with that process, too, and Humad reasonably relied on her to ensure that it was done correctly. As Olson told the FBI, "[o]n some occasions, Olson would sit next to Humad and help him clear the submission errors during the upload."

In the end, the jury will see and hear that SpineFrontier obtained legal opinion letters from outside counsel about the consulting program and also engaged in-house legal and compliance personnel to assist with required disclosures of all consulting payments. The jury will reasonably question whether and how the undisputed involvement and presence of these attorneys bears on the charges that Dr. Chin and Mr. Humad violated the AKS – and specifically, the element that they did so "willfully." Ordering the parties not to address such relevant, exculpatory issues (or to do so at the risk of waiving privilege) will not further the truth-seeking function of the trial. Indeed, it would improperly relieve the prosecution of its burden to prove beyond a reasonable doubt that Dr. Chin and Mr. Humad (and the many consulting surgeons), who engaged and worked with legal counsel and compliance personnel, willfully violated the AKS or conspired to do so.

Finally, at this point, about two months before the scheduled trial, it remains unclear how the proposed procedure would even work. This Court "permit[ted] the government to serve subpoenas pursuant to Federal Rule of Criminal Procedure 17 related to SpineFrontier/IME's communications with Strong & Hanni and its attorneys related to the subject matter of the opinion letters." D.E. 179 at 6. It further ordered that Defendants or Strong & Hanni would be entitled to withhold responsive communications or other documents based on the attorney-client privilege or work-product protection (but would need to provide a privilege log). *See id.* To date, however, it

appears that the prosecution has not served any subpoena.[3] Defendants do not know whether the prosecution has sought permission to serve a subpoena on corporate counsel or whether such permission has been granted. *See* Dep't of Justice Manual, § 9-13.410(1) (requiring authorization by Assistant Attorney General or Deputy Assistant Attorney General for the Criminal Division). Nor has SpineFrontier been given any opportunity to assert any privilege or protection regarding any possible disclosure by Strong & Hanni.

As the June 7, 2024 Order states, this Court anticipated holding "under seal pending further court order" all responsive documents and, "if Defendants [were to] invoke an advice/involvement-of-counsel defense" either before or during trial, referring review of those documents to the magistrate judge for *in camera* review, unsealing those documents related to the legal opinion letters from Strong & Hanni, and ordering that SpineFrontier (or Strong and Hanni) produce them to the government. *Id.* at 7. That process cannot work as planned, however, if the prosecution has not subpoenaed documents for this Court to hold under seal pending a later decision about privilege, and issuing a subpoena during trial would cause significant delay. If the prosecution were serious about its waiver claim, it should have acted promptly after this Court issued its June 7 Order, which permitted the prosecution to serve subpoenas. As things stand, however, if any Defendant invokes at trial the involvement or presence of counsel for SpineFrontier (or the consulting surgeons), it is unclear what would happen – that is, what documents would be unsealed and produced to the prosecution.

---

[3] Defense counsel spoke with the Managing Partner of Strong & Hanni LLP, who reported that as of June 27, 2024, the firm had not received a subpoena concerning its legal services to SpineFrontier or IME. On January 29, 2024, in connection with the meet-and-confer process for this motion, the prosecution stated in an email to defense counsel, "We are in the process of securing authorization to issue the subpoenas, and we hope to be able to do so shortly."

## CONCLUSION

For the foregoing reasons, Defendants Kingsley Chin and Aditya Humad respectfully request that this Court reconsider its June 7, 2024 Order [D.E. 179] and permit Dr. Chin and Mr. Humad to elicit evidence and make argument at trial about the involvement or presence of counsel for SpineFrontier, IME, or the consulting surgeons without causing any waiver of the attorney-client privilege concerning confidential legal communications.

Respectfully submitted,

**ADITYA HUMAD**

By his attorney,

/s/ *Daniel N. Marx*
Daniel N. Marx (BBO #674523)
William W. Fick (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

**KINGSLEY CHIN**

By his attorneys,

/s/ *Barry S. Pollack*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

Dated: July 29, 2024

## LOCAL RULE 7.1 CERTIFICATION

Undersigned counsel hereby certifies that counsel for Defendants conferred in good faith with counsel for the government as to this Motion, but the parties were otherwise unable to narrow or resolve the issues presented.

/s/ Daniel N. Marx
Daniel N. Marx

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that this document filed on July 29, 2024, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Daniel N. Marx
Daniel N. Marx