UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br>ADITYA HUMAD<br><br>Defendants. | No. 1:21-cr-10256-IT |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION
*IN LIMINE* TO EXCLUDE IMPROPER EVIDENCE REGARDING PURPORTED
ILLEGALITY OF THE DEFENDANTS' AND/OR WITNESSES' CONDUCT**

The United States submits this Opposition to Defendants' Motion *in Limine* concerning witness testimony about illegal conduct. Dkt. No. 257. The government agrees, of course, that it is emphatically the Court's "province and duty" to say what the law is. *Marbury v. Madison* 5 U.S. 137, 177 (1803). And the government agrees that this necessarily means that it is not for testifying witnesses to instruct the jury on the law. Dkt. No. 257, at 1 (citing *Nieves -Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (internal citations omitted)). Finally, the government also agrees that no prosecution witness will testify concerning the *Defendants'* intent, only the Defendants' actions, statements, and behavior. On all three of these points, the parties are in accord. But the government submits this Opposition to the Defendants' motion to clarify that the Court should permit witnesses to testify to two categories of information that are permissible and will aid the jury in its determination of the Defendants' guilt or innocence.

*First*, the government anticipates eliciting testimony from surgeons who plead guilty or settled civilly (the "Surgeons"), and from at least two SpineFrontier employees or agents, that

they knew that their participation in the conduct charged in the Indictment was wrong.[1] The jury should not be denied from learning that, e.g., the Surgeons understood they were acting wrongfully when they accepted the kickbacks the Defendants offered. It would not make sense to so prohibit the jury, as to prove a conspiracy between any one of the Surgeons and the Defendants, the government is required to prove the Surgeons' intent[2]—a point that the Defendants' themselves make in their Motion. Dkt. No. 257 at 2. It is obvious that testimony from the Surgeons that they acted wrongfully is direct evidence of the Surgeons' intent. Similarly, the government should be permitted to introduce evidence that SpineFrontier employee/agent coconspirators knew that they were acting wrongfully to prove that the Defendants' acted in conspiracy with them.

*Second*, the government anticipates offering testimony from representatives from the Centers for Medicare and Medicaid Services ("CMS") and from the VA Healthcare Program ("VA"), that CMS and the VA, respectively, do not pay for kickback-tainted claims because offering or paying kickbacks is illegal (a point about which there cannot be any dispute). If the Court accepts the Defendants' position and circumscribes the CMS and VA's witnesses' testimony, the jury would be deprived of understanding why CMS and the VA do not pay for kickback-tainted claims, and why those agencies are harmed by such claims. Moreover, the CMS and VA representatives would testify as to programmatic information (i.e., how spinal

---

[1] The Defendants also have moved *in limine* to exclude testimony from surgeons who settled civilly with the government because, *inter alia*, the government purportedly and improperly obtained the Surgeons' factual admissions contained in the settlements. This argument is incorrect for several reasons that the government separately addresses in its Opposition to that motion. But it is worth noting that the admissions do not contain an admission concerning the Surgeons' intent, nor an admission to liability.

[2] The government also intends to prove that the conspiracy existed between the Defendants.

surgery claims are submitted, and how the agencies reimburse such claims and any associated professional services claims) and their reimbursement of specific claims for surgical procedures and professional services that the Surgeons performed. Neither agency witness would testify to any facts concerning the Defendants' conduct, other than the facts that surgeries and professional services took place and the amount of reimbursement for those activities. Their testimony will aid the jury in understanding how CMS and the VA unknowingly paid for kickback-tainted claims and became victims of the Defendants' conduct.

### I.  Testimony from Coconspirator Witnesses Regarding Knowledge of Their Own Wrongful Behavior Should Not Be Excluded

The Defendants cite no case that supports their argument that testifying witnesses are not permitted to testify to knowledge of their own wrongdoing. The cases that they cite involve lay witness testimony offered for purposes of proving the *defendant's* intent. In *United States v. Van Eyl*, 468 F.3d 428, 437 (7th Cir. 2006), which the Defendants cite in support of their motion, the Seventh Circuit affirmed the district court's decision to grant a new trial because in closing argument the prosecutor used witness testimony to suggest that the witnesses knew that the defendant had acted unlawfully. *Id*. ("The [district] court did not wish to allow lay witnesses to testify about their beliefs that Van Eyl's actions were unlawful because the court believed the jury would inappropriately use those witnesses' opinions to determine Van Eyl's state of mind. Having barred that testimony, the court did not intend to allow the government to bring that theory in through the back door of closing argument[.]"). Unlike here, not only did *Van Eyl* involve the government's use of lay witnesses' testimony about the defendant's intent (not their own), *Van Eyl* also did not involve a conspiracy charge.

The Defendants also cite *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000), in which the defendants were convicted of conspiracy, securities fraud, and related crimes arising out of a

false revenue reporting scheme. *Id*. at 636. The district court admitted lay witness testimony concerning the defendants' knowledge. The Ninth Circuit ordered a new trial after finding that the government's "systematic[] and repeated[]" questioning of the new chairman of the board of the defendants' company "was done in order to elicit [his] conclusion that the defendants 'must have known' about the revenue reporting scheme." *Id*. at 639-40. Because defendants' "knowledge of the false revenue reporting scheme was critical to the government's case," *id.* at 639, and because the new board chair's testimony offered nothing new or helpful, *see* Fed. R. Evid. 701(b), the Ninth Circuit held that it was inadmissible lay opinion testimony. *Id.* at 641. Just like with *Van Eyl*, the holding in *Henke* is inapposite to the situation in this case. Again, in this matter, the government will not elicit testimony from witnesses about the *Defendants'* intent, but only about their own.

The final case the Defendants cite, *United States v. Anderskow*, 88 F.3d 245 (3d Cir. 1996), also offers no support for their position. In *Anderskow*, on appeal, two defendants contested the admission of lay opinion testimony from a cooperating coconspirator. *Id*. at 248. The government elicited testimony from the cooperator that one of the defendants "must have known" that the defendant had "engaged in large-scale fraud." *Id.* at 250. The Third Circuit found that it was error (although harmless) to permit such testimony, as "testimony from a witness concluding that the defendant 'had to know' usually will not meet Rule 701(b)'s helpfulness requirement[.]" *Id*. at 250 (internal citations and quotations omitted). Once more, this case does not address the government's proffered evidence here—it only concerns lay opinion testimony about the defendant's mindset, not evidence of the witnesses' own conduct.[3]

---

[3] The Defendants also cite *United States v. Belanger*, 890 F.3d 13, 25 (1st Cir. 2018), for the unremarkable legal proposition that "Rule 701 'provid[es] assurance against the admissions of opinions which would merely tell the jury what result to reach.'"). Dkt. No. 257 at 3 (quoting

Aside from citing cases which do not support their requested relief, the Defendants argue that the "hindsight beliefs about the illegality of the witness[es]' own conduct is likely to be unreliable and fraught with hearsay problems, influenced both by interactions with the government and, in many cases, counsel advising the witness." Dkt. No. 257 at 2. *First*, not every Surgeon or witness was advised by counsel to the government's knowledge, and the Defendants' failure to specify to whom their argument applies leaves their argument overbroad by definition. *Second*, the Defendants' arguments go to the weight of the Surgeons' and others' testimony. The Defendants are free, of course, to cross-examine testifying witnesses about their respective understandings, but the Court should not exclude witnesses' testimony about knowledge of their own wrongful conduct.

Indeed, the Defendants fail to explain how to reconcile their heads-they-win, tails-the-government-loses legal theory. If the government is required to prove the Surgeons' and others' intent in order to prove the existence of a conspiracy, but also foreclosed from eliciting testimony concerning their own wrongdoing, the Defendants have bootstrapped themselves far along the road to an exceedingly unfair presentation of the case. Fortunately, the law does not support the argument that witnesses are foreclosed about testifying about their own intent; the Defendants cannot locate a single case in which a coconspirator (or any witness) was prohibited from testifying about their own knowledge of wrongfulness.

---

*Belanger*). As the government stated in its opening paragraph here, the parties agree on that point of law.

## II.   Testimony From Agency Witnesses Should Not Be Excluded

The Defendants offer no argument in their Motion about the testimony of either agency's witness. Each agency is a victim of the Defendants' conduct, and each agency should be permitted to testify as to how such victimization occurred. The jury should be able to learn (i) that the agencies do not knowingly pay for kickback-tainted claims, (ii) how and why the agencies unknowingly paid for kickback-tainted claims, and (iii) how the agencies would have handled such claims had they known of the Defendants' conduct. As such, the Court should allow testimony from the CMS and VA witnesses.[4]

Alternatively, if the testimony is considered lay opinion testimony, it is (a) rationally based on the witness's (i.e., the agencies') perception, (b) helpful to understanding the agencies' testimony and helpful to determining a fact in issue (i.e., whether and how the agencies paid for surgery and professional services claims, respectively) and (c) not based on expert knowledge.[5] *Belanger*, 890 F.3d at 24-25. There is no reason to disallow the agencies' representatives' testimony, nor have the Defendants articulated any basis for so doing.

## CONCLUSION

For the foregoing reasons the government requests that the Court deny the Defendants' motion to exclude evidence. Dkt. No. 257.

---

[4] The proffered agency testimony is not opinion testimony; rather, it is testimony concerning each agency's rules and practices on reimbursement and claims processing.

[5] In an email dated February 28, 2025, counsel for Defendant Chin stated his position that the CMS witness's testimony consisted of expert opinion. That argument is incorrect. The witness's anticipated testimony about reimbursement and claims processing would not involve "scientific, technical, or other specialized knowledge," Fed. R. Evid. 702. As one of the victims in the case, CMS is entitled to explain how and why it was victimized.

Dated: March 2, 2025

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Abraham R. George*
Abraham R. George
Christopher Looney
Mackenzie A. Queenin
Assistant U.S. Attorney
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100

**CERTIFICATE OF SERVICE**

I, Abraham R. George, certify that on this 2nd day of March 2025, I caused this document to be filed via the ECF system.

*/s/ Abraham R. George*
Abraham R. George
Assistant U.S. Attorney

Dated: March 2, 2025