IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN,<br>    *Defendant*. | No. 1:21-cr-10256-IT |

### DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE
### IMPROPER EVIDENCE REGARDING SUBJECTIVE OPINIONS
### OF ILLEGALITY OF DEFENDANT'S AND/OR WITNESSES' CONDUCT

Defendant Kingsley Chin respectfully moves *in limine* to preclude the government from introducing evidence of (i) subjective opinions that defendant's conduct was illegal, and (ii) opinions that conduct by others, or the witness's own conduct, was illegal.

The government has stated that while it is "willing to agree that no witness will opine on the ultimate issue of whether the consulting arrangement in practice was illegal," it has also stated that it "anticipate[s] introducing testimony that witnesses understood the consulting arrangement was illegal, and testimony that kickbacks are illegal." The government's suggestion that couching witnesses' testimony about the law in terms of their subjective "understanding" somehow sanitizes plainly improper opinion testimony rings hollow. To be sure, the government may ask witnesses, subject to a proper foundation, what they understood about the purpose of a payment and what was expected in return. As described below, however, witnesses must do so without offering their opinions of legality.

*First*, it "is black-letter law that 'it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge.'" *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997) (quoting *United States v. Newman*, 49 F.3d 1, 7 (1st Cir. 1995)) (collecting cases). "In our

legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge." *Id*. Accordingly, "questions of law are not to be decided by the trier of fact; rather it is for the judge, not the lawyers or the witnesses, to inform the jury of the law applicable in the case and to decide any purely legal issue." *Id*. at 100 (internal quotation marks omitted). Testimony from witnesses, or other evidence, about "understandings" of the law and whether certain conduct is illegal would usurp the Court's role in deciding issues of law and the jury's role in applying those instructions to the facts established by the evidence.

*Second*, any opinion about the illegality of defendants' or others' actions is both irrelevant and more prejudicial than probative. *See* Fed. R. Evid. 401 and 403. A defendant cannot be convicted of conspiracy unless the evidence establishes both his "intent to agree and his intent to effectuate the object of the conspiracy." *United States v. Sawyer*, 85 F.3d 713, 742 (1st Cir. 1996). Substantive violations of the AKS likewise require knowing and willful offers or payment of remuneration to induce a person to buy goods paid for by a federal health care program. *See* 42 U.S.C. § 1320a-7b(b)(2)(B). A witness's opinion that certain conduct was unlawful is not relevant to whether *defendants* had the specific intent to violate the law at the time the defendants' alleged conduct took place, and is unduly prejudicial. *See United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").

*Third*, any opinion regarding the illegality of defendants' actions is an inadmissible and inappropriate lay opinion under Fed. R. Evid. 701. *See, e.g.*, *United States v. Van Eyl*, 468 F.3d

428, 437 (7th Cir. 2006) (affirming order of new trial where "the [district] court feared the jury would conclude that if others thought the conduct was wrong, then [the defendant] must have possessed the intent to defraud"); *United States v. Henke*, 222 F.3d 633, 639-40 (9th Cir. 2000) (holding that the district court erred by allowing questioning "done in order to elicit [the witness's] conclusion that the defendants 'must have known' about the illegal conduct"); *United States v. Anderskow*, 88 F.3d 245, 250 (3d Cir. 1996) (agreeing that testimony that defendant "must have known" improperly turned lay witness "into the thirteenth juror"); *see also United States v. Belanger*, 890 F.3d 13, 25 (1st Cir. 2018) (stating that Rule 701 "provides assurance against the admission of opinions which would merely tell the jury what result to reach").

*Fourth*, a witness's hindsight beliefs about the illegality of the witness's own conduct is likely to be unreliable and fraught with legal complexity and hearsay problems, influenced both by interactions with the government and, in many cases, counsel advising the witness. A witness who opines on the illegality of his own conduct based on legal advice becomes a conduit for inadmissible hearsay from the lawyer. Even if some hearsay exception arguably applied, that "lawyer" testimony, in turn, could not be evaluated without a waiver of privilege and disclosure of communications between the witness and counsel. Moreover, the jury could be left with a misimpression that cautious or "conservative" legal advice to the witness actually establishes the boundary between lawful and unlawful conduct, which would usurp the Court's role in instructing the jury about the law and *mens rea*. This is particularly true without a foundation established, outside the presence of the jury, that the defendant understood what the law prohibited, including its complex *mens rea* requirements, the existence or non-existence of which could be unique to each party.

Here, nothing in the production of statements by witnesses suggests that any of them could establish the requisite foundation to opine on whether Dr. Chin engaged in conduct that was lawful or unlawful. Among other things, the Anti-Kickback Statute ("AKS") requires proof that, when a party "encourage[s] customers to commit to purchasing from" it, the party charged with a violation "believed that its conduct was unlawful under the AKS or any other law." *United States ex rel. Hart v. McKesson Corp.*, 96 F.4th 145, 162-63 (2d Cir. 2024) (dismissing claims arising from federal AKS because allegations did "not plausibly suggest that McKesson acted with such knowledge of illegality"), *petition for cert. denied*, 145 S. Ct. 163 (2024); *see United States v. Exagen, Inc.*, No. 21-CV-10950-ADB, 2025 WL 959460, at *8 (D. Mass. Mar. 31, 2025) (dismissing action with prejudice in part on basis that "'[w]illfully' in the context of an AKS claim means 'with knowledge that [the] conduct was unlawful'"), *quoting U.S. ex rel. Langer v. Zimmer Biomet Holdings, Inc.*, 743 F. Supp. 3d 282, 292 (D. Mass. Aug. 2, 2024) (citing to *United States v. Bay State Ambulance and Hosp. Rental Serv., Inc.*, 874 F.2d 20, 33 (1st Cir. 1989), for proposition that establishing a violation of the AKS requires proof that the defendant "acted with knowledge that its conduct was unlawful"); *Omni Healthcare, Inc. v. MD Spine Sols. LLC*, No. 18-CV-12558-PBS, 2025 WL 32676, at *4 (D. Mass. Jan. 6, 2025) (explaining that for purposes of the AKS, "the term 'willfully' refers to knowledge that the conduct was unlawful"); *United States v. Teva Pharms. USA, Inc.*, 560 F. Supp. 3d 412, 421 (D. Mass. 2021) (explaining that "to establish a willful violation" of the AKS, "the complaint must allege that Teva acted with knowledge that its conduct was unlawful"). In addition, the element of the AKS that requires proof of an intention to induce a purchase requires that such inducement was more than a "collateral hope or expectation," but rather "*the* motivating factor for the

–4–

remunerative relationship." *United States v. Regeneron Pharms., Inc.*, No. CV 20-11217-FDS, 2020 WL 7130004, at *8 (D. Mass. Dec. 4, 2020) (emphasis added; internal quotation marks omitted); *Teva Pharms. USA, Inc.*, 560 F. Supp. 3d at 420 (D. Mass. 2021) (holding under AKS that "liability attaches only when the statements and actions of a [defendant] reveal an intent beyond a collateral hope or expectation, … such that it is clear that the remunerations were *designed specifically* to encourage claims to Medicare" (emphasis added; internal quotation marks omitted)). In other words, a witness attempting to opine about illegality involving Dr. Chin would have to testify to Dr. Chin's mindset or otherwise get dangerously close to doing so, which is not allowed because such subjects are not matters of personal knowledge or observation. *See United States v. Munera-Gomez*, 70 F.4th 22, 32 (1st Cir. 2023) (contrasting permissible testimony about "personal observations" with impermissible speculation about another's "internal emotional state" or "state of mind," which would not be based on personal knowledge).

## Conclusion

Based on the foregoing, the Court should bar the government from eliciting witness testimony or introducing other evidence about subjective understandings or beliefs concerning the illegality of defendant's and/or others' (including the witness's own) actions, and exclude any refence to such opinions, evidence, or testimony from the government's opening statement.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
bpollack@psdfirm.com
jsolomon@psdfirm.com

**Local Rule 7.1(a)(2) Certification**

Defense counsel certify that they conferred in good faith with counsel for the government in an effort to resolve or narrow the issues described herein.

/s/   *Joshua L. Solomon*

**Certificate of Service**

The undersigned certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on April 11, 2025.

/s/ *Joshua L. Solomon*