**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>KINGSLEY R. CHIN,<br>   *Defendant*. | No. 1:21-cr-10256-IT |

**DEFENDANT CHIN'S OPPOSITION TO MOTION**
***IN LIMINE* RE: ADMISSIBILTY OF EMAILS**

The government has moved *in limine* for a pre-trial ruling as to the admissibility of emails from various individuals, including some whom the government does not plan to call as witnesses at trial. The motion should be denied at this pre-trial stage, where the government has not provided the required foundation to admit these out-of-court statements as "non-hearsay."

**ARGUMENT**

The government moves *in limine* to admit an unidentified number of emails, arguing that the documents and all out-of-courts statements they contain constitute the personal "admissions" of Dr. Chin through his authorized "agents," or are statements by alleged "co-conspirators." The government has not satisfied its burden to have the emails at issue admitted on either of those grounds.

As an initial matter, the government's motion is ambiguous as to exactly which emails it seeks to have admitted at this stage. It attached to its motion 25 exhibits. Seventeen of those exhibits (Exhibits 1-4, 6-13, 15-17, 23, and 25) are discussed, on pages 1-4 and 8 and 9 of the government's motion, only in the context of the government's attempt to demonstrate agency. They do not themselves appear to be documents that the government is seeking to have admitted through its motion. In contrast to its treatment of those 17 documents, the motion, on pages 6 and

7, identifies eight of its exhibits – Exhibits 5, 14, 18, and 19-23 – as those that it seeks to have admitted as statements of "agents" or "co-conspirators." At the same time, however, the motion also states in a footnote that the eight documents it identifies on pages 6 and 7 are only *examples* of what it seeks to have admitted in this manner. (*See* Motion at 6 n.2.) It is thus difficult to glean from the motion exactly what the government's precise request is. But to the extent the government is asking the Court to issue a pre-trial ruling with respect to emails that it does not discuss in its motion, the Court should not accept the government's request for what would amount to an advisory opinion as to categories of emails that the government did not include with or discuss in its motion. The admissibility of particular emails should be considered based on the specific contents of those emails, and in the context of the government's offer of proof at trial. A categorical ruling about unidentified documents would not be appropriate.

With respect to the government's efforts to overcome the hearsay rule based on Fed. R. Evid. 801(d)(2)(D) or (E), the motion fails to lay the foundation that those rules require. The erroneous admission of these statements, including by individuals whom the government does not plan to call as witnesses at trial, would raise serious concerns of a constitutional magnitude under the Confrontation Clause. *See Bourjaily v. United States*, 483 U.S. 171, 182-83 (1987); *Dutton v. Evans*, 400 U.S. 74, 86 (1970); *United States v. Meises*, 645 F.3d 5, 19-25 (1st Cir. 2011). "The inability to cross-examine a declarant attains particular significance" when, as here, the government seeks to admit out-of-court statements as "agent" or "co-conspirator" statements because "declarations admitted under Rule 801(d) are defined out of the hearsay rule as a matter of estoppel, as opposed to being excepted from the rule as independently reliable statements." *United States v. Young*, 736 F.2d 565, 568 (10th Cir. 1983).

I.    **The government has failed to establish that the proffered emails are admissible pursuant to Fed. R. Evid. 801(d)(2)(D) as personal admissions of Dr. Chin through authorized "agents."**

The prosecution seeks to admit five emails (Exhibits 14, 18, 20, 21, and 22) from three former SpineFrontier employees (Scott Autrey, Chantal Goldson, and Frank Schnur), and two emails (Exhibits 5 and 20) from an employee of IME (Vanessa Dudley). The government argues erroneously that these emails (indeed, entire threads in which they appear) constitute out-of-court statements of authorized "agents" for Dr. Chin that are admissible against him as his own personal "admissions," despite no showing that he authorized the particular statement. *See Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 139 (D. Mass. 1990) (explaining that Rule 801(d)(2)(D) served only to "expand[] the traditional admissions exception to the hearsay rule to include statements made by agents on matters within the scope of their agency," based on the assumption that an agent "authorized to act" for a principal is "impliedly authorized to speak" for the principal "on the same matters").

As the party seeking to introduce these out-of-court statements pursuant to Rule 801(d)(2)(D), the government bears the burden to establish, by a preponderance of the evidence, that (1) a personal agency relationship existed between each of the declarants and Dr. Chin; (2) the out-of-court statements were all made during the course of the agency relationships; and (3) the statements related to matters within the scope of their agency relationships. *See Gomez v. Rivera-Rodriguez*, 344 F.3d 103, 116 (1st Cir. 2003) (holding district court abused its discretion in failing to exclude supposed agent's testimony as hearsay). The government bears a heavy burden to demonstrate these matters pretrial by way of a motion *in limine. See United States v. Edwards*, No. 16-20070-01-CM, 2019 WL 5196614, at *8 (D. Kan. Oct. 15, 2019) (denying prosecution's motion *in limine* and ruling that "proper admission of [declarant]'s statement . . . will depend on the government laying the proper foundation for the agency relationship between

the [declarant] and the defendants").

Moreover, as the government concedes, (Motion at 7-8), it must satisfy the burden to show that each agency relationship existed "by independent evidence before out-of-court statements by a purported agent can be deemed admissions by a party opponent." *Gomez*, 344 F.3d at 116 (emphasis added). Trial courts' discretion to make such evidentiary rulings is "not boundless." *Id.* at 117. For purposes of Rule 801(d)(2)(D), "the requisite foundation" – that is, sufficient proof of an actual agency relationship at the relevant time – "demands something more than intuitive judgments emanating from broad generalities," because such generalizations are "no substitute for hard facts." *Id.*

To be clear, the government does *not* seek to admit the statements of former employees of SpineFrontier or IME against SpineFrontier or IME itself. IME has never been a party to this case. All charges against SpineFrontier have been dismissed, supposedly to "streamline" the case. (*See* ECF 225.) That prosecutorial decision no longer to proceed against SpineFrontier has consequences: the government may not admit the proffered emails as "admissions" of SpineFrontier or its corporate agents, because SpineFrontier is no longer a "party-opponent." *See* Fed. R. Evid. 801(d)(2)(D) (authorizing admission of evidence only if it "is offered against a party"). The government can thus introduce these documents only if it proves by a preponderance of the evidence that the out-of-court statements are the personal "admissions" of Dr. Chin, through his own authorized "agents" within the scope of that personal agency.

As a general matter, in the corporate context, a difference exists between personal and corporate relationships. As a basic matter, statements of an out-of-court declarant may not be imputed under Rule 801(d)(2)(D) to a party-opponent who is "merely the declarant's co-employee," even if the declarant is a corporate subordinate. *Lippay v. Christos*, 996 F.2d 1490,

4

1498 (3d Cir. 1993) (reversing judgment because trial court erroneously admitted declarant's statements based on mere subordinate status and despite lack of "control" over declarant or statement at issue). Nor is it sufficient that a declarant is "subordinate to a party opponent" on a company's organizational chart. *Young*, 736 F.2d at 567. Rather the required relationship and authorization between an agent and his or her principal are "established only where the party-opponent personally 'directed [the declarant's] work,'" on "'*a continuing basis*,'" *and* did so with respect to the statement at issue. *Lippay*, 996 F.2d at 1498 (quoting *Boren v. Sable*, 887 F.2d 1032, 1041 (10th Cir. 1989)) (emphasis in original).

In other words, a trial court's decision whether to admit the statements of a corporate employee against a corporate superior (as opposed to the corporation itself) depends on the prosecution's proof regarding the functional relationship between the employee and the officer, and the authority specifically given over the particular statement. *See United States v. Agne*, 214 F.3d 47, 54-55 (1st Cir. 2000) (citing *Young*, 736 F.2d at 568). That is because "the admission of a statement by a corporate employee against his corporate superior rather than against the corporation itself 'may create a loophole in the hearsay rule through which evidence not contemplated by the authors of Rule 801 could be admitted.'" *United States v. Paxson*, 861 F.2d 730, 734 (D.C. Cir. 1988) (quoting *Young*, 736 F.2d at 567)); *see United States v. Wiedyk*, 71 F.3d 602, 605-07 (6th Cir. 1995) (holding trial court erroneously admitted statements under Rule 801(d)(2)(D) because evidence did not adequately establish agency relationship with defendant).

For example, in *Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989), a factory worker who was injured on the job sought to introduce the out-of-court statement of a co-worker against the defendant, who was the president and chief executive officer of the company that owned the factory. The plaintiff argued that the testimony was admissible under Rule 801(d)(2)(D) against

the defendant because the co-worker's position was "subordinate to that of the defendant." The Tenth Circuit rejected that formulistic argument, holding that the declarant's "mere occupation of a subordinate position in the corporate chain of command" could not suffice to establish an "agency relationship" with the defendant. *Id.* at 1040. Rather, to admit the co-worker's statements as admissions of a party-opponent through his authorized agent, the plaintiff would have had to demonstrate that the defendant "controlled the *daily* performance of [the declarant] at the time he made the alleged 'admissions'" and those "admissions" were authorized. *Id.* (emphasis added). Because plaintiff failed to make that required showing, the out-of-court statements were inadmissible hearsay.

Here, the government's haphazard and superficial approach to the proffered emails fails to establish the necessary personal agency relationships and authority between each of the declarants and Dr. Chin in his personal capacity and, instead, impermissibly relies on "broad generalities" about IME, SpineFrontier, and the many people who worked for SpineFrontier. It is not enough to assert that because Dr. Chin was SpineFrontier's CEO, *all* former employees of SpineFrontier and IME served at *all* times as authorized "agents" of him personally, able to make personal "admissions" on his behalf for evidentiary purposes in a criminal prosecution. As in *Gomez*, "the absence of particularized evidence" to satisfy the requirements of Rule 801(d)(2)(D) as to each proffered exhibit "dooms the [government]'s argument." 344 F.3d at 117.

Furthermore, the prosecution has failed to show that the emails at issue were sent "during the course of the relationship[s]." *Id.* at 116; *see United States v. Petraia Mar. Ltd.*, 489 F. Supp. 2d 90 (D. Me. 2007) (denying motion *in limine* to admit statements by crew members and engineering officials because, at the times of the statements, they were not agents of the defendant). The government's primary evidence consists of three charts that purport to describe,

*as of July 1, 2016*, Dr. Chin's relationships to SpineFrontier and IME, his ownership interests in the two companies, and SpineFrontier's organizational structure. (*See* Motion Exhibit 1.) Those charts post-date *all* the emails at issue by at least one year – and in one case by more than two and half years. To state the obvious, evidence of ownership interests, direct supervisory authority, or general organizational structures in July 2016 cannot establish what, if any, agency relationships and specific authority existed with Dr. Chin personally in 2013, 2014, or 2015, when his supposed "agents" sent the proffered emails.[1]

Putting aside the date problem, the charts also fall far short of providing sufficient evidence to establish specific agency relationships and authority between all declarants and Dr. Chin. The declarants include a Chief Sales Officer (Frank Schnur, Exhibit 22), a senior sales representative who worked in Texas (Scott Autrey, Exhibits 18 and 21), and a junior finance analyst (Chantal Goldson, Exhibits 14 and 20). The role of "chief sales officer" does not even appear on the organizational chart for SpineFrontier from 2016. And to the extent the chart includes the sales function as a single unit, it ambiguously draws a reporting line to the "CEO/CMO/CTO," and dotted reporting lines to the "CFO/President" and the COO, none of whom is identified by name. (Exhibit 1, at 3.) Meanwhile, the chart draws a reporting line from

---

[1]  The motion also does not provide adequate evidence that all the employees reported directly to or were directly or continuously supervised by Dr. Chin. The rhetorical claim that SpineFrontier and IME were "nothing more than Chin's alter ego" and that, at the same time, "Humad r[an] all operations" for both companies, makes no sense and highlights other flaws in the government's theories. (Motion at 9.) Which was it? Both statements cannot be correct, and the government's muddled discussion of both defendants throughout only highlights the need for this Court to carefully determine which proffered emails, if any, may be admissible at trial against Dr. Chin specifically, based on his particular interests, responsibilities, and relationships with the employees, as well as the personal authority, if any, that he granted. Indeed, the government's "alter ego" theory offers at most a superficial theory without a cognizable foundation.

the finance function only to the "CFO/President," but not to the "CEO/CMO/CTO." (*See id.*)
These charts leave many questions unanswered, but this much is clear: the anachronistic, overly
general, functional reporting relationships that they appear to describe do not establish that any
specific employee served as a personal authorized "agent" of any particular executive, let alone
Dr. Chin specifically with respect to statements at issue.

Beyond these inadequate charts, the government's additional evidence about the
existence of agency relationships is remarkably weak. For example, it points to signature blocks
on emails that list various formal titles for Dr. Chin with SpineFrontier. (*See, e.g.*, Exhibit 2
(identifying Dr. Chin as President, CEO, and CTO of SpineFrontier).) Those email footers say
nothing about the defendant's job descriptions, his specific corporate responsibilities at
SpineFrontier, or most importantly, his actual working relationships with other employees of the
company.[2] Moreover, the fact that Dr. Chin interacted with other SpineFrontier employees to
discuss company business is hardly surprising. Without more, that does not establish any
personal agency relationship under common-law principles. Co-employees, even those in
supervisory/subordinate roles, often work together and communicate, but only in special
circumstances can one be deemed the legal agent of another.

The record regarding Vanessa Dudley, who worked for IME rather than SpineFrontier, is
weaker still. The prosecution repeatedly emphasizes that Dudley is married to Dr. Chin,
mentioning that irrelevant fact at least 4 times in its 12 pages. In *Gomez*, however, the First
Circuit held: "The mere existence of a marital bond cannot serve as a proxy for competent proof

---

[2] In certain respects, the signature blocks also appear to be inaccurate; one email lists Dr.
Chin as "President & CEO" of SpineFrontier, (Exhibit 2), while another identifies Mr. Humad as
"President [and] Chief Financial Officer" of the same company, (Exhibit 3).

of an agency relationship" for the purpose of Rule 801(d)(2)(D). 344 F.3d at 117 ("[The declarant's] marriage to the Mayor, without more, does not demonstrate the formation of an agency relationship between them."). The same is true for Dr. Chin.

Nor does the government's baseless refrain that IME was a "sham company" establish that Dudley, IME's business administrator, was an authorized "agent" of Dr. Chin. As its "evidence," the government points to IME's application for a post office box. But it is hardly inappropriate, much less illegal, for a small company to use a post office box as a mailing address. At trial, the legitimacy of IME may be a hotly disputed issue – although the government itself has in some regards retreated from that allegation in the Superseding Indictment. Specifically, the government removed the allegation that IME was a sham created for the sole purpose of avoiding Sunshine Act disclosures, which the government has since realized were actually always made for consulting payments, accurately in SpineFrontier's name. For present purposes, even if the government could show that IME was a "sham company," whatever that means, such proof would not equate to Ms. Dudley being an authorized agent of Dr. Chin, or that she could make personal "admissions" on behalf of him for the purpose of Rule 801(d)(2)(D). The motion's point about the P.O. box has no probative value and is a non sequitur.

The prosecution also relies improperly on Ms. Dudley's own statements in an effort to establish her supposed personal agency relationship to Dr. Chin and specific authority to make statements at issue. *See Gomez*, 344 F.3d at 116 (holding "independent evidence" must be presented "before out-of-court statements by a purported agent can be deemed admissions by a party opponent"). Aside from a handful of emails to and from Ms. Dudley, the prosecution cites no evidence in support of its central – but erroneous – assertion that "Dudley at all times reported to Chin and Humad." (Motion, at 2.) For example, in one proffered email, Ms. Dudley told an

accountant at SpineFrontier that she did not have access to "IME's accounts," and that she thought "only Aditya and Kingsley do." (Exhibit 5.) Neither Ms. Dudley's lack of access to bank accounts, nor her belief about Dr. Chin's and Mr. Humad's access (which may or may not have been correct) proves that Dr. Chin "directed" her work "on a continuing basis," *Boren*, 887 F.2d at 1041, or otherwise authorized her to speak for him personally in the out-of-court communications at issue. It is simply not enough for the government to show that Ms. Dudley was an agent of IME or that she reported in ways to Mr. Humad or even at times to Dr. Chin.

Ignoring the First Circuit's caution against drawing speculative inferences from "broad generalities," such as a declarant's "subordinate" position on a company's organizational chart or a defendant's corporate title, the government asks this Court to rule that because Dr. Chin was a senior executive and owner of SpineFrontier (not IME), *all* the employees of both companies were his personal authorized "agents" who could speak for him personally on the matters at issue. That is not the law, and it would be error to admit emails as "non-hearsay" under Rule 801(d)(2)(D) on that ground. Dr. Chin respectfully requests that the Court deny the government's request, without prejudice to the possible "reconsider[ation] of the admission of the evidence at trial should the government lay the proper foundation." *Edwards*, 2019 WL 5196614, at *8.

## II.    The government has also failed to establish that proffered emails are admissible pursuant to Fed. R. Evid. 801(d)(2)(E) as statements of "co-conspirators" made "in furtherance of" the charged conspiracy.

The government argues that at least some of the proffered emails – although it does not specify exactly which ones – were the out-of-court statements of unindicted "co-conspirators" of Dr. Chin and made "in furtherance of" the charged conspiracy, making them admissions of Dr. Chin under Rule 801(d)(2)(E). *See United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977) (holding "if it is more likely than not that the declarant and the defendant were members of a

conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible").

As the party seeking to introduce out-of-court statements as declarations of co-conspirators in furtherance of a charged conspiracy, the prosecution must establish, by a preponderance of the evidence, that "a conspiracy embracing both the declarant and the defendant existed" and that "the declarant uttered the statement during and in furtherance of the conspiracy." *United States v. Sepulveda*, 15 F.3d 1161, 1180 (1st Cir. 1993) (citing *Bourjaily*, 483 U.S. at 175-76); *see United States v. Chan*, No. 16-CR-10268-IT, 2018 WL 3104112, at *2 (D. Mass. June 23, 2018) (denying prosecution's motion *in limine* because "the government has [not] yet shown that the statements are nonhearsay as coconspirator statements under Rule 801(d)(2)(E)"). That determination must rest "at least in part on corroborating evidence beyond that contained in the statements at issue." *United States v. Portela*, 167 F.2d 687, 703 (1st Cir. 1999); *see Sepulveda*, 15 F.3d at 1181-82 (holding "a co-conspirator's statement, standing alone, is insufficient to meet the preponderance standard for Rule 801(d)(2)(E)," and that district court erroneously admitted out-of-court statements without adequate, independent evidence as to what declarants' "status might have been vis-à-vis the charged conspiracy").

In *Petrozziello*, the First Circuit made clear that the trial court may, in its discretion, require the prosecution to "present all its non-hearsay evidence first" and only "then decide[] whether that evidence permit[s] reliance on the co-conspirator exception." 548 F.2d at 23 n.3 (stating "[n]othing in [Rule 801(d)(2)(E)] or this opinion requires [that] meticulous approach be abandoned"). Moreover, while statements may be provisionally admitted subject to later proof of the relevant conspiracy, as the prosecution notes, the First Circuit has held that district courts may "in appropriate cases follow alternative procedures pursuant to Fed. R. Evid. 104 in order to

determine the admissibility of evidence under Fed. R. Evid. 801 so long as a proper
'preponderance' ruling is made." *United States v. Campaglia*, 628 F.2d 632, 638 n.3 (1st Cir.
1980); *see United States v, Medina*, 761 F.2d 12, 17 (1st Cir. 1985) (recognizing, in certain
instances, that "a pre-trial hearing to determine the admissibility of statements under Rule
801(d)(2)(E)" may be "helpful").

Here, the brief argument in the government's motion comes nowhere close to satisfying
its burden under Rule 801(d)(2)(E), or even justifying provisional admission. The argument is
filled with vague promises of what the government expects to prove at trial, but makes no
meaningful effort at an actual showing by a preponderance of the evidence – or any other
standard – that a conspiracy existed with the declarants and that the statements at issue were
made in furtherance of it. In fact, the argument is filled with relics from the previous version of
the government's motion, before it filed a Superseding Indictment and dramatically reduced its
charged co-conspirators and disclosed list of unindicted alleged co-conspirators.

More specifically, at the outset of the case, the government provided with its automatic
disclosures a lengthy list of unindicted alleged co-conspirators, consisting of 19 names, including
surgeons, SpineFrontier employees, and others. As the government appeared to narrow its theory
of conspiracy and dropped charges, the Court directed the government at a March 6, 2025
hearing to identify to the defense whom the government actually considers to be unindicted co-
conspirators. A week later, on March 13, 2025, the government provided defendants with a new
list of unindicted co-conspirators, which now consists of only five names: three surgeons, a third-
party distributor, and a former SpineFrontier employee. The government further committed that
"[i]f anything changes with respect to the list we will let you know by April 4." The government
made no changes by April 4 or since. Yet in now attempting to seek admission of emails under

801(d)(2)(E), the government's motion refers to a conspiracy "between Chin and Humad and *various employees* of SpineFrontier and IME, [and] independent distributors of SpineFrontier products" (Motion at 11) – despite only one former employee of SpineFrontier, no employees of IME, and one distributor appearing on its reduced list of unindicted co-conspirators. Some of the emails at issue in this motion were authored by former SpineFrontier employees who were *never* on any list of unindicted alleged co-conspirators, including Chantal Goldson and Frank Schnur. Others were authored by Vanessa Dudley, whom the government had included on its original list at the outset of the case, but removed from its more recent list.

The government's vague promises to prove a conspiracy, especially one that is inconsistent with its disclosed theory of conspiracy, does not satisfy Rule 801(d)(2)(E). There is good reason here to proceed carefully with any *Petrozziello* rulings, especially where the government vaguely suggests now a sprawling conspiracy involving some (but not all) employees of two different companies, some (but not all) independent distributors of medical devices, and some (but not all) surgeons who consulted on product development, all while more recently identifying, in response to directions by the Court, a far narrower alleged conspiracy. As the First Circuit has cautioned:

> Frankly, the underlying co-conspirator exception to the hearsay rule makes little sense as a matter of evidence policy. No special guarantee of reliability attends such statements, save to the extent that they resemble declarations against interest. The exception derives from agency law, an analogy that is useful in some contexts but (as the Advisory Committee noted) is "at best a fiction" here. The most that can be said is that the co-conspirator exception to hearsay is of long standing and makes a difficult-to-detect crime easier to prove.

*United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997); *see United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979) ("It has also been candidly proposed by commentators, and implicitly acknowledged by the Advisory Committee for the Federal Rules of Evidence, that the exception is largely a result of necessity, since it is most often invoked in conspiracy cases in which the

13

proof would otherwise be very difficult and the evidence largely circumstantial."). Here, no "necessity" warrants relaxing the rules of evidence to help the government make its case. As the Court recognized when dismissing money laundering charges here because of the absence of concealment, the acts that the government alleges to have been conspiratorial occurred in the open through written agreements that counterparties' counsel reviewed and approved, and accompanied by public disclosures under the Sunshine Act. There appears no substantial dispute about which doctors served as consultants, which products they used with their patients, or how much they received in consulting fees.

Moreover, while Rule 801(d)(2)(E) applies to every type of case, it is notable that all the cases that the prosecution cites in its motion, like *Petrozziello* itself, involved charged drug conspiracies in which there is no legitimate business relationship. *See United States v. Mitchell*, 596 F.3d 18 (1st Cir. 2010); *United States v. Famania-Roche*, 537 F.3d 71 (1st Cir. 2008); *United States v. Thompson*, 449 F.3d 267 (1st Cir. 2006); *United States v. Capelton*, 350 F.3d 231 (1st Cir. 2003); *United States v. Newton*, 326 F.3d 253 (1st Cir. 2003); *United States v. Portela*, 167 F.3d 687 (1st Cir. 1999). When a declarant participates in the distribution of illegal drugs, it can be relatively easy for the trial court to conclude that there is no legitimate business and thus that the person was a member of a charged drug conspiracy. No person could reasonably believe that he or she was acting lawfully in helping others to sell heroin or cocaine. In contrast, when a declarant who works for a medical device company is alleged to have joined a criminal conspiracy to violate the AKS, the picture is necessarily different, with the declarant presumably operating as an employee within a genuine employment relationship. This principle takes on added significance given the heighted *mens rea* requirement for such an alleged violation of the AKS. Even if one were to assume *arguendo* that the CEO and/or CFO of the

company conspired to bribe doctors, it is easy to imagine that many other employees of the company, or independent distributors who sold its products, did not agree to commit any crime, even if those individuals did their jobs and contributed to the overall success of the company. After all, as the First Circuit has emphasized, "'[t]he essence' of conspiracy is an agreement to commit a crime." *Portela*, 167 F.2d at 695 (quoting *United States v. Moran*, 984 F.2d 1299, 1300 (1st Cir. 1993)). Indeed, the government's own shifting list of whom it considers unindicted co-conspirators reflects this reality. In this case, if an employee of SpineFrontier or IME assisted with the marketing, sale, or use of the company's spine products without the intent to bribe surgeons, the person could not reasonably be considered a "co-conspirator" for the purposes of Rule 801(d)(2)(E).

Finally, it is not sufficient for the prosecution to show that a declarant was a co-conspirator. To be admissible under Rule 801(d)(2)(E), the declarant must also have made his or her out-of-court statement "in furtherance of the conspiracy." *United States v. Ford*, 839 F.3d 94, 105-09 (1st Cir. 2016) (holding trial court erroneously admitted out-of-court statement of co-conspirator and "stretched the in furtherance exception too far"). The prosecution does not even attempt to make that showing with regard to particular emails. For example, Balzer pleaded guilty to conspiring to violate the AKS and obstruction of justice, *see United States v. Balzer*, No. 1:20-cr-10158-WGY (D. Mass.) (ECF 1 (information) & ECF 8 (plea agreement)), his email on June 6, 2013 to Mr. Humad, (Motion Exhibit 23), primarily concerns his own commissions as a distributor for SpineFrontier, not a facilitation of improper payments to Dr. Montone as a consultant for the company. Similarly, Goldson, whom the prosecution has *never* identified as an unindicted co-conspirator, even in its lengthy, now-withdrawn original list, exchanged several emails with Mr. Humad that attached spreadsheets of hours and payments for surgeons who consulted for

SpineFrontier. Although the prosecution did not submit those spreadsheets with its motion, they listed other surgeons, not only the alleged co-conspirators. To the extent that any such "statements" concern innocent doctors who, as the prosecution now appears to concede, provided valuable consulting services in exchange for compensation, they cannot have been in furtherance of the charged conspiracy. But in its motion, the prosecution blithely disregards such critical distinctions.

Given the prosecution's failure to lay a proper foundation for its supposed "co-conspirator" statements, this Court's conclusion in *Chan* applies equally here: "At this juncture, . . . the government has yet to offer any evidence – other than the government's summaries of the statements at issue – that a conspiracy existed and the statements were made during and in furtherance of the conspiracy." 2018 WL 3104112, at *2. Accordingly, this Court "cannot make the necessary determination at this time under Rule 801(d)(2)(E)." *Id.* As in *Chan*, therefore, the Court should bar the prosecution from referring to such evidence in its opening statement and require it to "seek permission from the court after making the necessary showing under Rule 801(d)(2)(E)" before offering such evidence at trial. *Id.*

## CONCLUSION

For the foregoing reasons, Defendant Kingsley Chin respectfully requests that the Court deny the prosecution's Motion *in Limine* re: Admissibility of Emails and defer the admissibility determinations at issue until the proper context exists at trial.

Respectfully submitted,

**KINGSLEY CHIN**

By his attorneys,

/s/ *Joshua L. Solomon*
Barry S. Pollack (BBO #642064)
Joshua L. Solomon (BBO #657761)
POLLACK SOLOMON DUFFY LLP
31 St. James Avenue, Suite 940
Boston, MA 02116
(617) 439-9800
*bpollack@psdfirm.com*
*jsolomon@psdfirm.com*

**Certificate of Service**

The undersigned certifies that this document, filed on May 2, 2025, through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Joshua L. Solomon*