UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KINGSLEY R. CHIN,<br><br>　　　　　Defendant. | No. 1:21-cr-10256-IT |

**GOVERNMENT'S TRIAL BRIEF**

The United States submits this brief in advance of the trial in this case scheduled to commence May 19, 2025.

## I.　　BACKGROUND

The Superseding Indictment charges defendant Kingsley R. Chin with conspiracy to violate the Anti-Kickback Statute ("AKS"), in violation of 18 U.S.C. § 371, and three substantive violations of the AKS, in violation of 42 U.S.C. § 1320a-7b(b)(2), each of which are tied to specific payments made by SpineFrontier to three surgeons (Surgeons 1–3) to induce those surgeons to use SpineFrontier's products. *See* Dkt. No. 310 ("Superseding Indictment") ¶¶ 33-36.

As described in the Superseding Indictment, Chin was the founder, president and principal owner of SpineFrontier, Inc., a manufacturer and seller of spinal implant devices. Superseding Indictment ¶¶ 1, 3. Under the guise of a legitimate consulting program, Chin conspired with others at SpineFrontier (including his co-defendant Aditya Humad) and with three outside surgeons and one outside distributor to pay monetary bribes to surgeons to induce and reward these three surgeons' use of SpineFrontier products. *Id.* ¶¶ 23-30.

Pursuant to these illegal arrangements, these surgeons submitted falsified timesheets reflecting hours of consulting work that they never performed and Chin and his co-defendant Aditya Humad—through SpineFrontier and another intermediary company that Chin owned and controlled, Impartial Medical Experts ("IME")—paid these three surgeons for purported consulting hours based not on time spent consulting, but on the number and type of surgeries the three surgeons performed and the amount of revenue that they generated for SpineFrontier. *Id.* ¶¶ 31-32.

During the course of the conspiracy, SpineFrontier paid these doctors hundreds of thousands of dollars for consulting work that never happened, and these doctors used millions of dollars' worth of SpineFrontier products. *Id.* ¶¶ 29-30.

## II.   EVIDENCE

The government expects to present the following evidence at trial, subject to revision based on ongoing witness preparation and trial planning.

### A. Witnesses

#### a. Former SpineFrontier Employees

First, the government anticipates that Scott Autrey, a former SpineFrontier sales representative, will testify, in substance, that Chin directed SpineFrontier's sales team to use the consulting program and the potential for surgeons to earn consulting fees as a lure to increase surgeons' use of SpineFrontier products and as a reward for increased used of SpineFrontier products.

Second, the government anticipates that Sarah Cook, a former SpineFrontier engineer, will testify that SpineFrontier had no process to assimilate and incorporate the supposed-feedback for which SpineFrontier paid surgeons, reflecting the fact that the consulting program

was a sham intended to bribe surgeons, rather than a legitimate means of gathering feedback from surgeons.

Third, the government anticipates that Chantal Goldson, a former SpineFrontier finance employee will testify that Chin's co-conspirator Aditya Humad, determined the number of hours and the amount of money to pay surgeons based upon the volume and value of SpineFrontier products they used—not based upon any consulting services that the surgeons actually performed.

    b.  Co-Conspirator Doctors / Independent Distributor

The government anticipates calling as witnesses the surgeons identified as Surgeons 1 – 3 in the Superseding Indictment (Drs. Jason Montone, Michael Murray and John Atwater).

The government expects that these witnesses will testify that they entered into sham consulting arrangements with SpineFrontier and that, rather than being paid for consulting work that they actually performed, they accepted consulting payments as bribes and rewards for continued and increased use of SpineFrontier's products. The government also anticipates that these witnesses will testify that they prepared and submitted consulting timesheets that listed hours of work far in excess of what they actually performed—and that they did so in consultation with and at the direction of Chin's co-conspirator Aditya Humad.

Similarly, John Balzer, a former independent distributor of SpineFrontier's products, will testify regarding the illegal agreement for SpineFrontier to pay bribes to Dr. Montone in exchange for Montone's use of SpineFrontier's products and the preparation of falsified consulting timesheets in consultation with and at the direction of Humad.

c.  <u>Representatives of Federal Government Healthcare Programs</u>

The government anticipates calling representatives of federal government healthcare programs, including an employee of at least one Medicare Administrative Contractor ("MAC") and an employee of Veterans Affairs ("VA"). The government anticipates that these witnesses will testify concerning the processing and reimbursement for claims for spinal surgeries. As part this testimony, the government expects these representatives to testify that Medicare's and the VA's rules prohibit payment of kickbacks for the use of medical services and products and that Medicare and the VA would not pay claims for spinal surgeries if they knew those claims were tainted by bribes and kickbacks Chin and SpineFrontier paid to the doctors performing the surgeries.

d.  <u>Law Enforcement Witnesses</u>

Robert Stull, an FBI forensic accountant, is expected to testify regarding his review of financial records and other data showing (i) the volume and value of SpineFrontier products used by Surgeons 1 – 3; (ii) the flow of payments from SpineFrontier to these surgeons (including through the intermediary IME); and (iii) specific payments made by SpineFrontier to Surgeons 1 -3, as alleged in the Superseding Indictment.

The government also anticipates that Stull or another government witness will summarize and read portions of relevant records including financial records, medical records, and emails.

e.  <u>Record Custodians</u>

As described below, the government will seek to introduce into evidence various records to prove that Chin committed the charged crimes. The government has proposed stipulations regarding the authenticity of these records and, as appropriate, their status as business records admissible under Federal Rule of Evidence 803(6). If required, the government will be prepared

4

to introduce testimony from records custodians and may seek a pretrial evidentiary hearing to establish the admissibility of these records.

### B. Documents and Records

The government has submitted its exhibit list to the Defendant. The government anticipates that it will continue to revise and refine its exhibit list as it prepares for trial. The following are the main categories of evidence that the government intends to introduce at trial:

- Emails between and among Chin and his co-conspirators proving Chin's intent and understanding (i) that consulting fees would be used to induce surgeons to use SpineFrontier's products; (ii) that doctors would be paid based upon the volume and/or value of the surgeries they performed using SpineFrontier products; and (iii) that Chin knew such arrangements were illegal;

- Letters provided by Strong & Hanni, SpineFrontier and IME's lawyers, describing the SpineFrontier consulting program and the Anti-Kickback Statute, which make clear that Chin and others at SpineFrontier knew it was illegal to pay doctors based upon the volume or value of SpineFrontier products that they used;

- Seemingly facially valid consulting agreements executed by SpineFrontier and surgeons that, again, made clear that it was illegal to pay doctors based upon the value or volume of SpineFrontier products that they used;

- Timesheets submitted by or on behalf of Surgeons 1–3 to SpineFrontier or IME reflecting bogus hours of consulting work that was not, in fact, performed; and

- Financial records and summaries of financial records showing the payments of hundreds of thousands of dollars in bribes to Surgeons 1–3.

## III. EVIDENTIARY ISSUES

The parties have filed multiple motions *in limine* which are currently pending before the Court. In addition to the issues raised in those motions *in limine*, the government raises the following additional issues for the Court's awareness:

### A. Hearsay Testimony and Exhibits From Attorneys Involved in the Investigation

Defense counsel served a witness and exhibit list on the government on Friday, April 25. The witness list includes a former prosecutor involved in the investigation and charging of the

case (who has since left the U.S. Attorney's Office) as well as two attorneys who represented or currently represent a witness in this case. These witnesses have no direct non-hearsay knowledge of the facts of the case and any testimony they might offer would be irrelevant to the determination of Chin's guilt. The defense should not be permitted to call them.

Similarly, the defendant's exhibit list contains a collection of PowerPoint presentations, letters, whitepapers, and other materials submitted to the government by lawyers advocating on behalf of subjects or witnesses of the investigation. Again, these materials are irrelevant hearsay and defendants should not be permitted to show these materials to the jury.

### B. Advice of Counsel

Pursuant to the Court's order, on March 3, 2025, Chin filed a notice expressly disavowing any intention "to raise a reliance on counsel defense and … to rebut *mens rea* with references to exculpatory involvement of lawyers as to whom he is asserting a privilege." Dkt. No. 278. Despite that election, Chin has identified Paul Speidel, SpineFrontier's former general counsel, as a trial witness. Similarly, on his exhibit list, Chin has identified as an exhibit an email from Chin to Humad asking: "Can we get an opinion from Paul Hess's group on this change to the consulting agreement per case evaluation versus the general consulting agreement." Exhibit 737. Hess was an outside attorney retained by SpineFrontier to provide advice concerning SpineFrontier's consulting program.

This witness and exhibit suggest that Chin intends to disregard or make an end-run around this Court's order which explicitly stated that:

> If Defendants point out to the jury the presence of lawyers "in the room" to draw such an exculpatory inference then, depending on the circumstances, either the jury will be instructed that no exculpatory inference may be drawn as to Defendants' *mens rea* from the fact that those individuals were lawyers, or the attorney-client privilege will be deemed waived.

Dkt. No. 247 at 10-11 (Court's Order on Motion to Reconsider).

Chin has made an election not to rely on an advice of counsel defense (or any sort of involvement-of-counsel defense). The Court should not permit him to recant that decision and call his company's general counsel and put in evidence that he sought legal advice regarding SpineFrontier's consulting program.

### C. Summaries of Voluminous Records

In addition to seeking pre-admission of business records, the government will seek to admit charts and summaries of financial records into evidence pursuant to Federal Rule of Evidence 1006. Rule 1006 permits the use of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The financial records at issue here are voluminous (spanning thousands of pages), cannot be conveniently examined in court, are independently admissible, and were previously produced to the defendant.

Accordingly, the government should be permitted under FRE 1006 to admit charts and summary exhibits at trial to provide the jury with easier access to the relevant information.

### IV. STIPULATIONS

The parties have conferred and exchanged drafts of proposed stipulations concerning both the authentication and admissibility of documents and substantive facts related to the case. The parties anticipate conferring further and will file any stipulations by May 9, 2025.

Absent stipulation, the government anticipates seeking a pre-trial evidentiary hearing to authenticate various records obtained during the investigation and lay the foundation for their admission before the jury. If such a hearing is required, the government also anticipates requesting authorization to issue subpoenas for record custodians to IME and SpineFrontier.

## V. OTHER

### A. Witness Travel

Several of the government's witnesses are traveling from out of state to testify. Depending on witness schedules and the progress of the trial, the government may request that certain witnesses be allowed to testify out of order.

### B. Case Agent.

The government requests that the Court designate HHS-OIG Special Agent Daniel Mancini as case agent and that Special Agent Mancini be permitted to sit in the courtroom (not at counsel table) during trial.

Respectfully Submitted,

LEAH B. FOLEY
United States Attorney

*/s/ Chris Looney*
ABRAHAM R. GEORGE
CHRISTOPHER LOONEY
MACKENZIE A. QUEENIN
Assistant U.S. Attorneys
1 Courthouse Way
John Joseph Moakley U.S. Courthouse
Boston, MA 02210
(617) 748-3100

## CERTIFICATE OF SERVICE

      I hereby certify that this document was filed through the ECF system on May 2, 2025, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) (with paper copies to be sent to those indicated as non-registered participants).

                                          */s/ Chris Looney*
                                          CHRISTOPHER R. LOONEY
                                          Assistant United States Attorney